UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DELONEO BREHAM,

    Defendant.

_____/

Case No. 21-cr-20165

Honorable Nancy G. Edmunds

**ORDER AMENDING JUDGMENT TO INCLUDE AMOUNT OF RESTITUTION**

On February 22, 2021, Defendant Deloneo Breham shot Cedrick Jackson while attempting to take his vehicle from a gas station in Detroit, Michigan. Defendant later pled guilty to one count of carjacking resulting in serious bodily injury, in violation of 18 U.S.C. § 2119(2), and one count of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (ECF No. 36.) The victim requested $50,000 in restitution. On May 2, 2022, this Court sentenced Defendant to an aggregate 235 months' imprisonment on both counts. (ECF No. 46.) At his sentencing, Defendant objected to the amount of restitution requested by the victim. The determination of the amount of restitution was therefore deferred and the parties were informed that an amended judgment would be entered at a later date. (*Id.*, PageID.344.) On July 11, 2022, the Court held a restitution hearing. The parties then submitted supplemental sentencing memorandums regarding restitution. *(Id.*; ECF Nos. 54, 56.) The Government asks the Court to order $139,363.15 in restitution. (ECF No. 54, PageID.412.) Defendant asks the Court to order $8,184.00 in restitution. (ECF No. 56, PageID.461.) As detailed below, the Court now orders $52,001 in restitution.

1

**I.      Statutory Authority for Restitution**

Restitution against Defendant is mandatory and is governed by 18 U.S.C. § 3663A. In determining the amount of restitution, the government must prove the losses by a preponderance of the evidence and the court must find that the defendant's criminal conduct directly and proximately caused the actual or intended loss to the victim. *United States v. Fowler*, 819 F.3d 298, 307 (6th Cir. 2016); 18 U.S.C. § 3664(e). The final number must correspond to all actually ascertainable losses, but where it is "impossible to determine the precise amount," a "reasonable estimate" will suffice. *United States v. Ageloff*, 809 F. Supp. 2d 89, 96 (E.D.N.Y. 2011) (quoting *United States v. Catoggio*, 326 F.3d 323, 329 (2d Cir. 2003)). "While the district court need not make specific findings in calculating restitution, the information relied upon by the district court in reaching the final calculation must have sufficient indicia of reliability to support its probable accuracy." *Fowler*, 819 f.3d at 307.

**II.     Specific Items of Restitution**

**A.  Insurance Deductible for Vehicle Repair**

The victim testified that his vehicle was damaged during the attempted carjacking and that he had to pay $1,000 towards repairs. (ECF No. 55, PageID.422-23.) The Court finds the victim's testimony credible. Thus, Defendant shall pay **$1,000** in restitution for the victim's vehicle repair.

**B.  Mental Health Services Expense**

The victim testified that he has lingering emotional and mental health issues as a result of the incident. (ECF No. 55, PageID.423.) He states he sought treatment for these issues and, although he has not paid any out-of-pocket expenses for treatment thus far,

that he anticipates he will need to pay $200 every other week out-of-pocket for continued treatment over the next several years. (ECF No. 55, PageID.424-25.) The Government calculates this expected future expense to be $10,400. (ECF No. 54, PageID.409.) Defendant, however, argues that this request should be denied because the victim failed to submit documentary support for his diagnosis and treatment plan, and because the victim testified that his doctor did not provide the number of treatment sessions he should attend. (ECF No. 56, PageID.458.)

The victim testified that he attended eight mental health treatment sessions every other week beginning in April or May of 2021. (ECF No. 55, PageID.440.) Five of those sessions were paid for by his insurance and three of those sessions were paid for by the State of Michigan as part of a crime victims' compensation fund. (*Id.* at PageID.439.) He stated he did not attend additional mental health treatments beyond those that were covered (*Id.* at PageID.440), which would mean that at the time of the hearing he had been out of treatment for approximately ten months.

The Court finds the victim's testimony credible, but the Government's calculation of expected future expenses unreasonable. The victim has not attended any therapy sessions for quite some time and there is no evidence he would go back to therapy every other week at an expense of $400 per month. Nevertheless, what the victim experienced was undoubtedly traumatic and this Court does not dispute the importance of maintaining one's mental health. The Court orders Defendant to pay **$4,000** in restitution to the victim for his mental health treatment, the equivalent of twenty mental health sessions at $200 per session.

### C.     Medical Expenses For Rehabilitation

The victim underwent several surgeries and participated in an extensive physical therapy program after being shot by Defendant. He testified that he attended rehabilitation sessions three to four times per week at an expense of $140 per session, though his first sixty visits were covered by his health insurance. (ECF No. 55, PageID.421.) He continued to attend rehabilitative therapy after those covered sessions and at the time of the hearing, he had a balance due for these services equal to $1,400. (*Id.* at PageID.437.) The victim testified he "could" need rehabilitative services "for a few years," but that "[i]t just depends." (*Id.* at PageID.422.) The Government calculates restitution for rehabilitative services at $45,080, made up of $1,400 actual incurred costs and $43,680 estimated future costs. (ECF No. 54, PageID.410.) Defendant argues that the victim failed to submit any medical records to confirm his treatment and estimated future rehabilitation needed, and failed to submit documentation to support the amount of money he spent out-of-pocket on rehabilitative services expenses thus far. (ECF No. 56, PageID.457.)

The Court finds the victim's testimony regarding his incurred expenses credible, but agrees with Defendant that evidence supporting the Government's calculation of estimated future expenses is lacking. The victim's statements that he could require therapy for a few years and that "it just depends" are not sufficiently reliable to support the accuracy of the Government's calculations. *See Fowler*, 819 f.3d at 307. Accordingly, Defendant is ordered to pay **$1,400** in restitution to the victim for his actual expenses incurred for rehabilitative therapy.

### D. Lost Income

The last item for which the victim requests restitution is the income which he lost due to his injuries and associated physical and mental trauma. The Government calculates the victim's lost income as $82,883.15 and the Defendant calculates the victim's lost income as $8,184. (ECF No. 54, PageID.412; ECF No. 56, PageID.461.)

The victim testified that at the time he was shot, he held three jobs in the hospitality industry. (ECF No. 55, PageID.427.) He stated that although the pandemic initially affected his income negatively, each of his three jobs have returned to pre-pandemic levels. (*Id.* at PageID.431.) The Court finds this testimony credible.

The victim provided check history detail reports for two of his jobs. From January 2020 until mid-March 2020, before the pandemic slowed or shut down operations in the hospitality industry, the check history reports show Defendant worked between 15.5 and 32.5 hours per bi-weekly pay period and was paid approximately $1,650, or $22 per day from January 1 through March 15, at Churchills of Grosse Pointe. In the same time period, Defendant worked between 10 and 16 hours per bi-weekly pay period and was paid approximately $825, or $12.14 per day from January 1 through March 8, at Churchills of Birmingham. The victim did not provide documentary proof of income for his third job, but he testified that he received approximately $1,000 per week (ECF No. 55, PageID.450), or $143 per day.

The victim testified that after being shot, he was unable to work until July 1, 2021, or for approximately 129 days. (ECF No. 55, PageID.429.) On July 1, he returned to only one of his three jobs for approximately six hours per week. (*Id.*) He testified that in August 2021, he began working nine hours per week. (I*d.* at PageID.430.) The Government

provides an undated letter from the victim's doctor stating the victim may work twelve hours per week. The victim recalls receiving this letter in May 2022 so could have worked up to twelve hours from that time until the time of the hearing. (*Id.* at PageID.434.) The victim's pay stubs show he makes $14 per hour.

The Court finds this evidence credible, but also finds the Government fails to establish when the victim can return to full-time work, or whether and how the victim has tried to mitigate his loss of income.

The Court orders **$45,601** in restitution to compensate the victim for his lost income. While Defendant is correct, that it is impossible to calculate the victim's exact amount of lost income, the Court finds this amount to be "a reasonable estimate" given the parties' arguments and evidence presented. *See Ageloff*, 809 F. Supp. at 96. This amount includes **$22,851** to compensate the victim for 129 days of no income from any of his three jobs. It also includes **$1,904** in restitution for July 2021 ($14 per hour and 34 hours per week lost times four weeks), **$16,926** in restitution for August 2021 through April 2022 ($14 per hour and 31 hours per week lost times 39 weeks), and **$3,920** in restitution from May 2022 until the date of the restitution hearing ($14 per hour and 28 hours per week lost times 10 weeks). The Court finds the Government does not meet its burden to establish continued loss of income past the hearing date with evidence that is sufficiently reliable. Thus, no further restitution is ordered.

### III. Conclusion

Based on the above, the Court orders Defendant to pay restitution to Cedrick Jackson in the amount of **$52,001**. This amount is relatively close to the $50,000 initially

requested by the victim and the Court believes it is a reasonable estimate of the victim's losses. An amended judgment will be entered herewith.

**SO ORDERED.**

        s/ Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: September 29, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2022, by electronic and/or ordinary mail.

        s/ Lisa Bartlett
        Case Manager